# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| M.G., as parent and next friend of D.G., a minor,<br><br>   Plaintiffs,<br><br>   v.<br><br>CAMP WOOD YOUNG MEN'S CHRISTIAN ASSOCIATION, CAMP LEADERS USA, SMALLER EARTH, INC., and JACOB M. WARD,<br><br>   Defendants. | Case No. 16-2275-JAR-GEB |

## MEMORANDUM AND ORDER

Plaintiff M.G alleges contract and tort claims under Kansas law related to the alleged physical, sexual, and emotional abuse of her daughter, D.G., by a summer camp counselor at Camp Wood YMCA ("Camp Wood") in June 2014. Plaintiffs bring suit against Camp Wood; the counselor, Jacob Ward; and the entities, Smaller Earth, Inc. and Camp Leaders USA, whom are alleged to have conducted a background check and otherwise vetted and facilitated Ward's employment by Camp Wood. Before the Court is Defendant Smaller Earth, Inc.'s Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) and to Dismiss Counts III, V, VI, IX, X, and XI of the First Amended Complaint for Failure to State a Claim (Doc. 42).[1] The motion is fully briefed,[2] and the Court is prepared to rule. As described more fully below, Defendant's motion to dismiss is granted for lack of

---

[1]Smaller Earth maintains that Camp Leaders USA is not a legal entity, but instead that Smaller Earth does business as "Camp Leaders." Smaller Earth's motion therefore also applies to Defendant Camp Leaders USA. Plaintiffs do not challenge this assertion. *See* Doc. 57 at 1 n.1.

[2]At a status conference before Judge James on October 6, 2016, Plaintiff's request for jurisdictional discovery was denied, although Camp Wood was ordered to produce a copy of its CGCL insurance policy, and Plaintiffs were allowed an opportunity to supplement their response brief. *See* Docs. 59, 62, 64.

personal jurisdiction. Defendants Smaller Earth, Inc. and Camp Leaders USA are therefore dismissed without prejudice. The Court does not reach Smaller Earth's motion to dismiss for failure to state a claim.

## I.     Standard

Plaintiff has the burden of establishing personal jurisdiction over Defendant.[3] In the absence of an evidentiary hearing, as in this case, the plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[4] "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[5] Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[6] When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[7] The court resolves all factual disputes in favor of the plaintiff.[8] Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[9] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must

---

[3] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[4] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056–57 (10th Cir. 2008); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[5] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1159 (10th Cir. 2010) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1286 (10th Cir. 2007)); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[6] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[7] *Pytlik*, 887 F.2d at 1376; *see also Shrader*, 633 F.3d at 1248.

[8] *Dudnikov*, 514 F.3d at 1070.

[9] *Behagen*, 744 F.2d at 733.

present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[10]

## II.     Facts

Drawing all reasonable inferences in favor of Plaintiff, the following relevant facts are taken from the First Amended Complaint, and the exhibits attached to the parties' briefs.  The Court does not consider any general or conclusory allegations not supported by affidavits or other competent evidence, and has resolved all factual disputes in Plaintiff's favor.

Plaintiff D.G. is a minor resident of Clay County, Missouri.  Plaintiff M.G. is the natural mother of D.G and is also a resident of Missouri.  D.G. attended summer camp at Camp Wood in Elmdale, Kansas, during the week of June 22–28, 2014.  Camp Wood is a Young Men's Christian Association ("YMCA") camp organized and existing under the laws and regulations of the State of Kansas.  The YMCA owns and operates Camp Wood, and the property on which Camp Wood is situated.

Smaller Earth, Inc. ("Smaller Earth") is a Delaware corporation, with its principal place of business in Connecticut.  Camp Leaders is a name used by Smaller Earth to conduct business in the United States.  Smaller Earth works with employers in the United States that wish to employ international camp counselors and support staff for the summer.  Smaller Earth provides employers in the United States with access to an online database of international individuals who have expressed interest in working at American summer camps, and who have satisfied the requirements of the American Camp Association and the United States Department of State Cultural Exchange Program.  Smaller Earth's website and online database are managed, maintained, and hosted in the United Kingdom.  Smaller Earth customers create a free account

---

[10]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

each year with Smaller Earth enabling them to access and query the database for potential applicants. Through the online database, United States employers review information about potential applicants.

Other than its business relationship with Camp Wood relating to Camp Wood's employment of Ward, Smaller Earth has no ties to Kansas. Smaller Earth is not authorized or licensed to do business in Kansas, it has no agent authorized to accept service of process here, none of Smaller Earth's employees are located in Kansas, it neither owns nor leases property in Kansas, it has no bank or credit accounts in Kansas, it has no assets in Kansas, it has no telephone listing in Kansas. Camp Wood is the only Kansas employer that had access to Smaller Earth's online database in 2014.

In 2014, Ward approached USA Summer Camp Ltd., an affiliate of Smaller Earth, in the United Kingdom to become an exchange visitor through the United States under the Department of State's J-1 Cultural Exchange Program. Ward's J-1 Visa was granted for exchange visitor status, and he was allowed to enter the United States legally. USA Summer Camp, Ltd. collected references and arranged for a police background check to establish the suitability of Ward to participate in the Cultural Exchange Program. USA Summer Camp, Ltd.'s actions took place in the United Kingdom. Ward was ultimately accepted into the Cultural Exchange Program and thereafter, United States employers could see his profile in the online database, including his references and background check.

Camp Wood found Ward on the online database and contacted him directly in the United Kingdom and interviewed him. Camp Wood then offered Ward a camp contract for the summer of 2014 and confirmed with Smaller Earth that Ward would be placed there as an employee for the summer.

Camp Wood electronically accepted a contract offered by Smaller Earth on its database called a Program Agreement, which discusses the services provided by Smaller Earth and provides for minimum requirements of the contract between Camp Wood and Ward.  Under the Program Agreement, Camp Leaders agrees to, *inter alia*, "[c]onduct an interview and screening process that shall include obtaining references, and a police criminal background check" and "facilitate communications between the participant, the Camp and any alumni."[11]  Under the agreement, Camp Leaders is to invoice the Camp monthly and the Camp agrees to pay certain program fees and flight surcharges.  Also, the Camp was required "[t]o arrange for Camp Leaders to be added as an insured beneficiary under [its Employer's Liability Insurance policy] and to process claims promptly on notification by either Camp Leaders or a participant."[12]

Smaller Earth never met with Ward and Ward was never an employee of Smaller Earth.  Ward entered the United States on his J-1 Visa and performed under a camp contract of employment with Camp Wood.  Ward was one of approximately 20,000 applicants to the Cultural Exchange program for the summer of 2014.  Only 5881 of these applicants secured a placement.

**III.   Discussion**

Federal courts follow state law "in determining the bounds of their jurisdiction over persons."[13]  To establish personal jurisdiction over a defendant, a plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process.[14]  The Kansas long-arm statute is construed liberally so as to allow

---

[11] Doc. 68 at 3.

[12] *Id.* at 7.

[13] *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

[14] *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

jurisdiction to the full extent permitted by due process, therefore the Court proceeds directly to the constitutional analysis.[15]

The due process analysis is comprised of two steps. First, the court must consider whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there."[16] If the requisite minimum contacts are found, the Court will proceed to the second step in the due process analysis—ensuring that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"[17]

"Minimum contacts" can be established in one of two ways, either generally or specifically for lawsuits based on the forum-related activities:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.[18]

Plaintiff does not allege general jurisdiction, but instead alleges that Smaller Earth had minimum contacts with Kansas based on specific jurisdiction. The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation."[19] To establish minimum contacts, the "defendant's suit-related conduct must create a substantial connection with the

---

[15] *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

[16] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010) (citing *OMI Holdings, Inc.*, 149 F.3d at 1091).

[17] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[18] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citations omitted).

[19] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

forum State."[20]  One aspect of this requirement is that the Court must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[21]  The Supreme Court has provided the following examples of instances where defendants' suit-related contact has been sufficient to establish a substantial connection:

> entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, *Burger King*, *supra*, at 479–480, 105 S. Ct. 2174, or by circulating magazines to "deliberately exploi[t]" a market in the forum State, *Keeton*, *supra*, at 781, 104 S. Ct. 1473.  And although physical presence in the forum is not a prerequisite to jurisdiction, *Burger King*, *supra*, at 476, 105 S. Ct. 2174, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.  *See, e.g.*, *Keeton*, *supra*, at 773–774, 104 S. Ct. 1473.[22]

Plaintiff argues that Smaller Earth transacted business in Kansas by entering into the Program Agreement with Camp Wood.  While it is true that Smaller Earth entered into a contract with Camp Wood when Camp Wood opted to hire Ward as a camp counselor, merely entering into a contract with a resident of Kansas does not suffice to establish minimum contacts.[23]  To determine if a defendant has established minimum contacts by contracting with a resident of the forum state, the Court looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[24]  The contract "must have a 'substantial connection' with the forum state."[25]

The Program Agreement, attached to Plaintiff's brief, is limited to establishing the minimum requirements for Ward's employment contract, it contains waivers for Smaller Earth,

---

[20]*Id.* at 1121–22.

[21]*Id.* at 1122.

[22]*Id.*

[23]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007).

[24]*TH Agric. & Nutrition, LLC.*, 488 F.3d at 1288 (quoting *Burger King Corp.*, 471 U.S. at 479) .

[25]*Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

and it provides for fees and insurance coverage.  It requires that Camp Wood carry Smaller Earth on its employment liability policy.  There are no facts alleged in the Complaint to support a reasonable inference that the parties intended this contractual relationship to be continuing and wide-reaching—it pertained to a single employee contract for a fixed amount of time.  Smaller Earth has submitted evidence that this is the only placement it made in the State of Kansas in 2014, out of 5881 placements in the summer of 2014.  Moreover, the contract was an electronic form agreement offered by Smaller Earth on its database and electronically accepted by Camp Wood—there is no allegation that the parties negotiated this agreement, executed it in the State of Kansas, or intended for it to reach beyond the short tenure of Ward's employment by Camp Wood that summer.  In sum, the Program Agreement does not evidence the type of continuing relationship or obligation with the State of Kansas required to demonstrate minimum contacts.

Plaintiff also argues that by "delivering" Ward to Kansas to serve as a camp counselor in exchange for a fee, it transacted business in the State of Kansas.  Plaintiff argues that Smaller Earth received compensation for its placement of Ward in Kansas and that Plaintiff's claims arise out of this transaction.  But for the same reasons explained above, this business transaction does not evidence continuous or wide-reaching contracts with Kansas.  The Program Agreement evidences an isolated electronic form contract between Defendant and a single resident of Kansas.  The Court agrees that under *Burger King* and *Walden*, such contacts are insufficient to establish specific jurisdiction.

Plaintiff points to the provision in the Program Agreement requiring Camp Wood to add Smaller Earth as an insured beneficiary to its Public and Employer's Liability Insurance policies.  Therefore, Plaintiff urges that Smaller Earth qualifies as an "insured" under Camp Wood's CGL

policy.[26]  Since Smaller Earth required Camp Wood to insure it against risks occurring at Camp Wood in Kansas, and because Plaintiffs' claims include "bodily injuries" and "sexual abuse," covered by the CGL policy, Plaintiffs argue that Smaller Earth has purposefully availed itself of jurisdiction in Kansas.  But the Court agrees with Smaller Earth that its insured status under the CGL policy does not establish minimum contacts.   Smaller Earth did not negotiate or sign the CGL insurance policy and there is no evidence that Smaller Earth has any input into performance of the insurance contract in Kansas.[27]  Smaller Earth's contacts with Kansas must have been created by it, they cannot be "contacts which resulted from the unilateral acts of a third party."[28] The insurance policy here was procured by a third party, Camp Wood.  To the extent it is enforced it would constitute actions by a third party, and not by Smaller Earth.  Smaller Earth's qualification as an "insured" under Camp Wood's CGL policy is insufficient to constitute minimum contacts with the State of Kansas.

Plaintiffs argue that Smaller Earth committed tortious acts outside of Kansas by enabling Ward's physical and sexual abuse of D.G., which are sufficient under the Kansas long-arm statute to confer jurisdiction.  This contact is based on Plaintiff's allegation that Smaller Earth facilitated Ward's employment at Camp Wood by seeking out an "active relationship with Camp Wood" and receiving compensation in exchange for facilitating placement.  It is also based on Plaintiff's allegation that Smaller Earth's failure to properly vet Ward caused the Plaintiffs' injuries.  Defendants respond that Plaintiff's injuries are not causally related to Smaller Earth's conduct.

In the Tenth Circuit, "[t]he mere allegation that an out-of-state defendant

---

[26]Doc. 64-1 at 29.

[27]*See Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1200–02 (D. Kan. 2000); *Admiral Ins. Co. v. Briggs*, No. 302CV0310P, 2002 WL 1461911, at *8 (N.D. Tex. July 2, 2002).

[28]*Whittaker*, 96 F. Supp. 2d at 1200.

has . . . committed business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."[29]  The Court evaluates both the quantity and quality of defendant's contacts with the State of Kansas.[30]  The Tenth Circuit, as well as other courts, requires a plaintiff to present "something more" than the injuries a plaintiff allegedly suffered in order to show that a defendant aimed or targeted its conduct at the forum state.[31]  Here, as described above, the quantity and quality of Smaller's Earth's contacts with the State of Kansas are minimal.  There is no factual allegation to support Plaintiffs' claim that Smaller Earth's business was purposefully directed at Kansas.  In fact, Defendant has demonstrated by affidavit that out of 5881 placements in 2014, only one participant—Ward—was placed in Kansas.

Likewise, the Court finds that Plaintiff has failed to allege facts sufficient to demonstrate that Smaller Earth's conduct in Great Britain caused D.G.'s injuries.  The Tenth Circuit applies an "effects test," allowing the exercise of jurisdiction when there is a prima facie showing that defendant (1) intentionally acted (2) in a manner expressly aimed at Kansas, with (3) knowledge that the brunt of the injury would be felt in Kansas.[32]  While there is some overlap between the two elements, "expressly aiming" conduct is not the same as an awareness of its foreseeable

---

[29] *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995); *see also Tomlinson v. H & R Block, Inc.*, 151 F. App'x 655, 658 (10th Cir. 2005) ("But the mere allegation that a nonresident defendant tortiously injured a forum resident does not necessarily establish sufficient minimum contacts to confer personal jurisdiction on the forum.").

[30] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.5 (10th Cir. 2005); *OMI Holdings*, 149 F.3d at 1092.

[31] *See, e.g., Dudnikov*, 514 F.3d at 1077; *Allison v. Wise*, 621 F. Supp. 2d 1114, 1120 (D. Colo. 2007); *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011, 1021 (D. Kan. 2006) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)); *Gage, Inc. v. BioConversion Tech., LLC*, No. 2:08-CV-57 DB, 2009 WL 3181940, at *10 (D. Utah Sept. 30, 2009); *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at *13, *16 (D. Kan. May 28, 2009).

[32] *Dudnikov*, 514 F.3d at 1072 (analyzing *Calder v. Jones*, 465 U.S. 783 (1984)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2014) (discussing *Calder* and explaining that [t]he strength of that connection was largely a function of the nature of the libel tort.").

consequences. "[T]he 'express aiming' test focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts—while the latter requirement concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff."[33] To "expressly aim" conduct, the forum state must be the "focal point of the tort."[34] Plaintiff has failed to demonstrate that Smaller Earth meets the requirements necessary to show minimum contacts under the "effects" test. Plaintiffs fail to allege intentional conduct by Smaller Earth that was aimed at Kansas with knowledge that injury could be sustained here.

Finally, Plaintiffs suggest that Smaller Earth transacted business in Kansas through the internet by "facilitating Defendant Wood's [sic] employment." To show that Smaller Earth's commercial activity on the internet establishes personal jurisdiction, Plaintiffs must allege that it "deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."[35] The Tenth Circuit has made clear that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."[36] Plaintiffs offer no allegation that Smaller Earth intentionally directed its internet activity to the State of Kansas, or that it intended harm to the Plaintiff in the State of Kansas. Merely hosting a website that was accessible by Camp Wood does not suffice.

For all of these reasons, the Court finds that Plaintiffs failed to make their prima facie showing of minimum contacts between Smaller Earth and the State of Kansas to satisfy due

---

[33]*Id*. at 1075.

[34]*Id.* at 1074 n.9 (quoting *Far W.*, 46 F.3d at 1080).

[35]*Shrader v. Biddinger*, 633 F.3d 1235, 1240–41 (10th Cir. 2011) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

[36]*Id.* at 1241.

process.  The claims against Smaller Earth therefore must be dismissed for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Smaller Earth, Inc.'s Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) and to Dismiss Counts III, V, VI, IX, X, and XI of the First Amended Complaint for Failure to State a Claim (Doc. 42) is **granted**.  Defendants Smaller Earth and Camp Leaders USA are dismissed without prejudice for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: February 21, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE